IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

SARAH USRY and DANIEL DARNELL,
on behalf of themselves and
all others similarly situated,

Plaintiffs,

1:16-cv-010

v.

EQUITY EXPERTS.ORG, LLC d/b/a
EQUITY EXPERTS,

Defendant.

# O R D E R

Before the Court is Plaintiffs' Motion for Class Certification and Supporting Memorandum of Law. (Doc. 77.)[1] Plaintiffs allege that Defendant violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, and the Georgia usury statute, O.C.G.A. § 7-4-2, when it sought to collect delinquent assessments on behalf of Georgia homeowners' associations. Because the Court finds that Plaintiffs' proposed class is a fail-safe class, the Court **DENIES WITHOUT PREJUDICE**

---

[1] Plaintiffs' original Motion for Class Certification was filed as Document 61. The Court subsequently requested that Plaintiffs refile the motion to clarify conflicting record citations. Plaintiffs complied with the Court's request by refiling their motion as Document 77. Accordingly, the Clerk of Court **SHALL TERMINATE** Document 61. The Court will now treat Document 77 as Plaintiffs' Motion for Class Certification and Supporting Memorandum of Law.

Plaintiffs' motion and grants Plaintiffs leave to file a new motion for class certification within **THIRTY (30) DAYS** from the date of this Order.

## I. Background

The named Plaintiffs are Georgia homeowners belonging to the Ashbrooke Property Owners Association ("Ashbrooke"). (Doc. 77, at 6-9.) From the years 2012-2015, Ashbrooke charged its members an annual assessment of $115. (Id. at 9.) During this time period, Plaintiffs Usry and Darnell failed to pay one or more of their annual assessments. (Id. at 9-11.) Due to these failures, Defendant began collection efforts against them on Ashbrooke's behalf. These collection efforts sparked the present lawsuit.

The covenant which governs the Ashbrooke subdivision authorizes Ashbrooke to impose a number of penalties against homeowners who fail to pay an annual or special assessment. (Doc. 77-1, at 5.) Ashbrooke may: (1) charge interest on the assessment "at the rate of eighteen percent (18%) per annum or the highest rate permitted by law"; (2) impose "a reasonable late charge"; (3) add interest and late charges to "the annual assessment to which [each] [l]ot is subject"; (4) "foreclose the lien of the delinquent assessment against the [l]ot"; (5) "bring an action at law against the [o]wner personally obligated to pay the delinquent assessments"; (6) and assess the homeowner for

2

"all costs and attorney's fees which [Ashbrooke] shall incur" pursuing any foreclosure or action at law. (Id. at 8.)

Consistent with its enforcement abilities, Ashbrook contracted with Defendant in June 2013 to collect delinquent assessments. (Doc. 77-3, at 1.) The contract states that Defendant was "authorized on behalf of [Ashbrooke], and pursuant to Limited Powers of Attorney, to collect the delinquent assessments from the responsible party, plus any and all costs of collection charged by [Defendant], as outlined in [Defendant's] standard fee structure addendum which is updated and distributed semi-annually." (Id.) The contract cited in the record does not include the fee structure used at the time of signing.

Ms. Usry failed to timely pay her 2013 annual assessment. On June 28, 2013, she received her first letter from Defendant. (Doc. 77-4, at 599.) The letter informed Ms. Usry that Defendant was seeking to collect her delinquent assessment on behalf of Ashbrooke. (Id.) The letter then informed her that her current balance was $443.65, but that if she did not pay within thirty days her balance would be "at least $838.65." (Id.) Over the next six months Defendant assessed the following fees against Ms. Usry:

| | |
|---|---|
| Account Setup Fee | $175.00 |
| Intent to Record Lien Package | $95.00 |
| Lien Recording and Discharge Package | $395.00 |
| Constant Contact Service Package | $750.00 |
| Pre-Foreclosure Package | $1,495.00 |

3

By December 2013, Ms. Usry "owed" Defendant a sum of $3,083.65. (Id. at 618.) In December 2014, Defendant sent Ms. Usry a letter stating her current balance was $3,199.60, but that if she did not pay within ten days, her balance "may be at least $6,644.60." (Id. at 600.)

Mr. Darnell suffered a similar experience. Mr. Darnell also failed to timely pay the 2013 annual assessment of $115.00. (Doc. 35, at 5.) He settled his account with Defendant in November 2013 for $1,351.00. (Doc. 77, at 11.)

Plaintiffs filed this class action alleging that Defendant engaged in a standardized debt collection scheme that violated the FDCPA and Georgia usury laws. Plaintiffs' claim rests upon the allegation that Defendant charged the following fees directly to delinquent homeowners:

| | |
|---|---|
| Account Setup Fee: | $175.00 |
| Intent to Record a Lien Notice: | $95.00 |
| Recording of the Lien Notice: | $395.00 |
| Constant Contact Communication Package: | $750.00 |
| Intent to Foreclose Notice: | $1,495.00 |
| Post Intent to Foreclose Notice: | $100.00 (monthly) |
| Managing the Foreclosure Litigation Fee: | $3,445.00 |

(Doc. 77, at 6-7.) Plaintiffs argue that these fees are "exorbitant, unsubstantiated, and bogus." (Id. at 4.) They complain that because the fees are not listed in "any of the covenants of any Georgia neighborhood for which Defendant provides collection services" (id. at 6), Defendant violates the FDCPA when it charges these fees directly to the homeowner,

4

rather than the relevant homeowners' association. According to Plaintiffs, this practice violates the FDCPA because it uses "false, deceptive, [and] misleading representation" to collect the delinquent debt and is an "unfair or unconscionable means to collect or attempt to collect debt." (Id. at 4.) They also claim that Defendant's fees violate Georgia usury law because the fees "are actually interest, far in excess of what can be charged under Georgia law." (Id. at 17.)

Plaintiffs ask this Court to certify a general class and three subclasses. (Id.) Plaintiffs define their general class as:

> All natural persons in Georgia to whom Equity Experts sent collection letters asserting claims for delinquent assessments, interest, and fees in violation of the FDCPA and the Georgia usury statute while residing in the State of Georgia (hereinafter the "General Class Members").

(Id.) Plaintiffs define their three subclasses as:

> All natural persons in Georgia to whom Equity Experts sent collection communication seeking to collect illegal interest or other sums not owed (hereinafter the "Illegal Interest Class Members).
>
> All natural persons in Georgia against whom Equity Experts has filed a lien and/or lawsuit asserting claims for delinquent assessments, interest, and fees while residing in the State of Georgia and against whom the lawsuit or lien remains pending and unpaid (hereinafter the "Injunction Class Members").
>
> All natural persons in Georgia from whom Equity Experts received any payment arising from collection efforts of assessments by Equity Experts which included usurious interest charged in violation of the Georgia usury statutes and illegal fees charged in violation of the FDCPA while residing in the State of Georgia (hereinafter the "Unjust Enrichment Class Members").

(Id. at 3-4.)

5

## II. Discussion

Defendant challenges Plaintiffs' proposed class definitions on the basis that they are impermissible "fail-safe" classes. (Doc. 68, at 4.) The Court agrees.

"A fail-safe class is a class whose membership can only be ascertained by a determination of the merits of the case because the class is defined in terms of the ultimate question of liability." In re Rodriguez, 695 F.3d 360, 369-70 (5th Cir. 2012). A fail-safe class is improper because it "shields the putative class members from receiving an adverse judgment. Either the class members win or, by virtue of losing, they are not in the class and, therefore, not bound by the judgment." Randleman v. Fidelity Nat. Title Ins. Co., 646 F.3d 347, 352 (6th Cir. 2011). "A proposed 'fail-safe' class should not be certified because it is unfair to defendants, it prevents an adverse judgment being entered against plaintiffs, and it is unmanageable because the members of the class could only be known after a determination of liability." Mazell v. Money Store, 288 F.R.D. 45, 55 (S.D.N.Y. 2012) (citations omitted).

The Court finds that all but one of Plaintiffs' proposed class definitions are "fail-safe" because "eligibility as a class member" is "dependent upon a legal conclusion." Alberton v. Commonwealth Land Title. Ins. Co., 264 F.R.D. 203, 207 (E.D. Pa. 2010). Membership in Plaintiffs' General Class depends upon whether Defendant asserted claims for delinquent assessments,

6

interest, or fees "in violation of the FDCPA and the Georgia usury statute." (Doc. 77, at 3 (emphasis added).) Membership in Plaintiffs' Illegal Interest Class depends upon whether Defendant sought "to collect illegal interest or other sums not owed." (Id. (emphasis added).) And membership in Plaintiffs' Unjust Enrichment Class depends upon whether Defendant "received any payment [from the class member] arising from collection efforts of assessments by Equity Experts which included usurious interest charged in violation of the Georgia usury statutes and illegal fees charged in violation of the FDCPA while residing in the State of Georgia." (Id. at 4 (emphasis added).) The Court, therefore, cannot certify Plaintiffs' class using the proposed class definitions.[2] See Randleman, 646 F.3d at 352.

The Court recognizes that it may use its discretion to "revise a proposed class definition to avoid the problem of a fail-safe class." Campbell v. First Am. Title Ins. Co., 269 F.R.D. 68, 74 (E.D. Me. 2010). The Court, however, declines to exercise this discretion and instead grants Plaintiffs the opportunity to propose class definition(s) that avoid the fail-safe problem. Accordingly, the Court **DENIES WITHOUT PREJUDICE** Plaintiffs' motion to certify the proposed class. See In re ConAgra Foods, Inc., 302 F.R.D. 537, 581 (C.D. Cal. 2014)

---

[2] Because Plaintiffs' umbrella General Class is a fail-safe class, the Court will not certify the lone subclass which was not fail-safe — the Injunction Class.

7

(denying motion to certify class without prejudice and granting plaintiffs thirty days to "address the decencies noted" in the court's order).

### III. Conclusion

The Court cannot certify Plaintiffs' proposed class because it is a fail-safe class. But, the Court believes Plaintiffs should have the opportunity to fix the proposed class. Thus, the Court **DENIES WITHOUT PREJUDICE** Plaintiffs' motion (doc. 77), and grants Plaintiffs leave to file a new motion for class certification within **THIRTY (30) DAYS** from the date of this Order.

**ORDER ENTERED** at Augusta, Georgia, this 16th day of February, 2018.

_____
J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA