# IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF GEORGIA
### AUGUSTA DIVISION

SARAH USRY and DANIEL DARNELL,    &ast;
on behalf of themselves and   &ast;
all others similarly situated,   &ast;
  &ast;
    Plaintiffs,   &ast;
  &ast;
      v.   &ast;      CV 116-010
  &ast;
EQUITYEXPERTS.ORG, LLC d/b/a   &ast;
EQUITY EXPERTS; MICHAEL NOVAK;   &ast;
JACQUELINE GALOFARO; and MARK   &ast;
BREDOW,   &ast;
  &ast;
    Defendants.   &ast;

## O R D E R

Before the Court is Plaintiffs' amended motion for class certification. (Doc. 93.) Having undertaken a detailed analysis of the briefs and the record, the Court **GRANTS** Plaintiffs' motion.

## I. BACKGROUND

This action is based on Defendants' alleged violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, violation of the Georgia usury statutes, O.C.G.A. § 7-4-1 *et seq.*, and Georgia law prohibiting unjust enrichment in seeking delinquent dues on behalf of Georgia homeowners associations. (Second Am. Compl., Doc. 91, ¶ 1.)

## A. Factual History

Plaintiffs, proposed class representatives, are Georgia homeowners and members of the Ashbrooke Property Owners Association ("Ashbrooke"). (Third Am. Mot. to Certify Class, Doc. 93, at 8-10.) Over approximately three years, from 2012 through 2015, Ashbrooke charged its members an annual assessment of $115. (Id. at 8, 10; Usry Aff., Doc. 79-5, ¶ 7; Darnell Aff., Doc. 79-6, ¶ 7.) Plaintiffs each missed an annual assessment payment during the relevant time period. (Usry Aff., ¶ 9; Darnell Aff., ¶ 9.) Following the missed payments, Defendant EquityExperts.org ("Defendant Equity Experts") initiated collection efforts to recover the annual fee. (Usry Aff., ¶ 9; Darnell Aff., ¶ 9.) Plaintiffs allege that Michael Novak, Jacqueline Galofaro, and Mark Bredow ("Individual Defendants," collectively with Defendant Equity Experts, "Defendants") were responsible for developing and implementing the practice Defendant Equity Experts employed to collect outstanding payments. (Second Am. Compl., ¶ 34.).

Per Ashbrooke's Declaration of Rights, Restrictions, Affirmative Obligations and Conditions Applicable to the Ashbrooke Subdivision ("Declaration"), Ashbrooke is authorized to impose certain penalties against members failing to pay required fees. (Decl., Doc. 79-1, at 5.) Pursuant to the Declaration, amounts due and payable "shall bear interest from the due date at the rate of eighteen percent (18%) per annum." (Id. at 8.)

The Association may also impose a reasonable late charge upon delinquent assessments for each installment that remains unpaid. Such interest and late charges shall be added to and become part of the annual assessment to which such Lot is subject. The Association may foreclose the lien of the delinquent assessment against the Lot, and the Association may bring an action at law against the Owner personally obligated to pay the delinquent assessments. In either event, the Owner shall also be liable to the Association for all costs and attorney's fees which the Association shall incur in connection with the collection of such delinquent amounts.

(Id.)

In 2013, Ashbrooke contracted with Defendant Equity Experts to collect late and unpaid assessments. (Equity Experts Community Association Collection Agreement, Doc. 79-3, at 1.) The agreement authorizes Defendant Equity Experts, "pursuant to Limited powers of Attorney, to collect the delinquent assessments from the responsible party, plus any and all costs of collection charged by [Defendant Equity Experts], as outlined in our standard fee structure addendum which is updated and distributed semi-annually." (Id.) The affixed addendum at the time of signing included a fee structure: (1) "Intent to Record Lien Letter" – "$50"; (2) "Preparation of Lien & Draft to Owner" – "$75"; (3) "Constant Contact" – "$75"; (4) "Notice of Intent to Foreclose and Draft to Owner" – "$75"; (5) "Publication of Foreclosure" – "$450 Publication Estimate." (Id. at Addendum A.)

As for the proposed class representatives, Defendant Equity Experts mailed correspondence to Plaintiff Usry dated June 28,

2013.  (Galofaro Dep., Doc. 79-4, Ex. 12.)  The letter announced that the delinquent account had been turned over to Defendant Equity Experts for collection.  (Id.)  The letter continued to notify Plaintiff Usry that her current balance was $443.65 and, if she did not pay the balance within thirty days of the letter, the balance would increase to $838.65.  The $443.65 balance included the "Beginning balance from association" — "$173.65"; "Standard Account Set-Up" — "$175.00"; and "Intent to Record Lien package" — "$95.00."  (Galofaro Dep., Ex. 18.)  Defendant Equity Experts followed through on its warning in the June 28, 2013 letter, and on September 9, 2013, Defendant Equity Experts applied a "Lien recording and discharge package" charge in the sum of $395.00.  (Id.)  At that point, Plaintiff Usry owed $838.65.  (Id.)

Over the next three months, Defendant Equity Experts added charges for the "Constant Contact Service Package" and the "Pre-Foreclosure Package" in the amounts of $750.00 and $1,495.00, respectively.  (Id.)  As of December 2, 2013, Defendant Equity Experts claimed that Plaintiff Usry owed $3,083.65.  (Id.)  Approximately one year later, by letter dated December 11, 2014, Defendant Equity Experts informed Plaintiff Usry that her balance was $3,199.60 and if she did "not pay within [ten] days, balance may be at least: $6,644.60."  (Id. Ex. 13.)

The second proposed class representative, Plaintiff Darnell, experienced similar circumstances following his failure to timely

4

pay his 2013 annual assessment of $115.00. (Darnell Aff., ¶¶ 7, 9, 11.) Plaintiff Darnell settled the account with Defendant Equity Experts for $1,351.00. (Id. ¶ 14.)

Plaintiffs offer Defendants' sequence of charges imposed upon receiving a delinquent account as justification for their claims:

    Account Setup Fee - $175.00
    Intent to Record a Lien Notice - $95.00
    Recording of the Lien Notice - $395.00
    Constant Contact Communication Package - $750.00
    Intent to Foreclose Notice - $1,495.00
    Post Intent to Foreclose Notice - $100 monthly, in perpetuity
    Managing the Foreclosure Litigation Fee - $3,445.00

(Third Am. Mot. to Certify Class, at 6-7.) Plaintiffs argue that the fees charged are not contained "in any of the covenants of any Georgia neighborhood for which Defendant [Equity Experts] provides collection services" and "the homeowners from whom Defendant collects and attempts to collect delinquent assessments have no agreements or contracts with Defendant agreeing to what Defendant might charge." (Id. at 5; see also Galofaro Dep., at 73, 81.) According to Plaintiffs, Defendants' methods used to collect the debts violate the FDCPA. (Second Am. Compl., ¶¶ 50-59.) Additionally, Plaintiffs claim that Defendants' charged fees are disguised interest on the debt exceeding 16% per annum in violation of Georgia usury laws. (Id. ¶¶ 60-68.) Finally, Plaintiffs allege unjust enrichment resulting from Defendants' collection of amounts to which they were not entitled. (Id. ¶¶ 69-75.)

Plaintiffs assert Defendants' common practice for charging and collecting certain amounts resulted in injury to numerous potential class members. Accordingly, Plaintiffs purport this case is appropriate for class adjudication.

## B. Procedural History

Plaintiff Usry initially filed the present action in the Superior Court of Columbia County, Georgia, but Defendant removed the case to this Court. (Notice of Removal, Doc. 1.) On August 15, 2016, Plaintiff Usry filed her motion for leave to file an amended complaint to add Plaintiff Darnell as a named plaintiff and proposed class representative. (Doc. 30.) The Court granted the motion (Doc. 34), and Plaintiffs filed their first amended complaint on September 8, 2016. (Doc. 35.) Plaintiffs filed a motion for leave to file their second amended complaint on April 5, 2018, seeking to add the Individual Defendants. (Doc. 82.) The Court granted Plaintiffs' motion (Doc. 90), and Plaintiffs filed their second amended complaint on March 18, 2019. (Doc. 91.)

Plaintiffs filed their first motion to certify class on June 14, 2017. (Doc. 61.) On January 11, 2018, the Court ordered Plaintiffs to refile their motion to certify class but ordered that the amended motion to certify class should not contain any substantive changes. (Doc. 76.) In compliance with the Court's

Order, Plaintiffs filed their first amended motion to certify class the next day.  (Doc. 77.)

In their first amended motion to certify class, Plaintiffs asked the Court to certify the following general class:

> All natural persons in Georgia to whom Equity Experts sent collection letters asserting claims for delinquent assessments, interest, and fees in violation of the FDCPA and the Georgia usury statute while residing in the State of Georgia (hereinafter the "General Class Members").

(First. Am. Mot. to Certify Class, Doc. 77, at 17.)  Plaintiffs also proposed class definitions for three putative subclasses:

> a. All natural persons in Georgia to whom Equity Experts sent collection communications seeking to collect illegal interest or other sums not owed (hereinafter the "Illegal Interest Class Members"); and,
>
> b. All natural persons in Georgia against whom Equity Experts has filed a lien and/or lawsuit asserting claims for delinquent assessments, interest, and fees while residing in the State of Georgia and against whom the lawsuit or lien remains pending and unpaid (hereinafter the "Injunction Class Members"); and,
>
> c. All natural persons in Georgia from whom Equity Experts received any payment arising from collection efforts of assessments by Equity Experts which included usurious interest charged in violation of the Georgia usury statutes and illegal fees charged in violation of the FDCPA while residing in the State of Georgia (hereinafter the "Unjust Enrichment Class Members").

(Id. at 1–2.)  Before the Court reached the explicit requirements of Federal Rule of Civil Procedure 23, it denied Plaintiffs' motion on the implied requirement of ascertainability.  (Feb. 16, 2018 Order, Doc. 78.)  Specifically, the Court determined that

Plaintiffs' general class and two of the subclasses were defined as fail-safe classes. (Id. at 6-8.) The Court denied the motion to certify class without prejudice and permitted Plaintiffs the opportunity to correct the class definitions. (Id. at 8.)

Plaintiffs filed their second amended motion to certify class on March 16, 2018. (Second Am. Mot. to Certify Class, Doc. 79.) The second amended motion defined the general class as:

> All natural persons in Georgia to whom, while residing in Georgia, Equity Experts sent collection letters asserting claims for delinquent assessments, where the interest and/or fees, exceed sixteen percent (16%) per annum of the delinquent assessment. (hereinafter the "General Class Members").

(Id. at 1.) Plaintiffs also revised the putative subclasses and expanded the number of subclasses from three to four:

> a. All natural persons to whom, while residing in Georgia, Equity Experts sent collection communications seeking to collect interest and/or fees in excess of sixteen percent (16%) per annum of the delinquent assessment. (hereinafter the "Illegal Interest Class Members"); and,

> b. All natural persons against whom, while residing in Georgia, Equity Experts has filed, or threatened to file, a lien and/or lawsuit asserting claims for interest and/or fees in an amount in excess of sixteen percent (16%) per annum of the delinquent assessment. (hereinafter the "Injunction Class Members"); and,

> c. All natural persons from whom, while residing in Georgia, Equity Experts received any payment of interest and/or fees in excess of sixteen percent (16%) per annum of the delinquent assessment. (hereinafter the "Unjust Enrichment Class Members"); [and,]

> d. All natural persons from whom, while residing in Georgia, Equity Experts sought payments in excess of

8

sums stated in the governing HOA agreement plus reasonable costs of collection. (hereinafter the "Excess Sums Class Members").

(Id. at 2.) Again, the Court denied Plaintiffs' motion to certify class without prejudice finding that determining the class membership was not administratively feasible. (Mar. 12, 2019 Order, Doc. 90, at 12-15.)

Plaintiffs filed their third amended motion to certify class shortly thereafter. (Third Am. Mot. to Certify Class.) The present motion defines the putative class as:

All natural persons in Georgia to whom, while owning a home in Georgia, Equity Experts sent collection letters asserting claims for delinquent assessments, where the interest and/or fees, exceed sixteen percent (16%) per annum of the delinquent assessment. (hereinafter the "General Class Members").

(Id. at 2.) The third amended motion to certify class also revised the definitions of the putative subclasses:

a. All natural persons to whom, while owning a home in Georgia, Equity Experts sent collection communications seeking to collect interest and/or fees in excess of sixteen percent (16%) per annum of the delinquent assessment. (hereinafter the "Illegal Interest Class Members"); and,

b. All natural persons against whom, while owning a home in Georgia, Equity Experts has filed, or threatened to file, a lien and/or lawsuit asserting claims for interest and/or fees in an amount in excess of sixteen percent (16%) per annum of the delinquent assessment. (hereinafter the "Injunction Class Members"); and,

c. All natural persons from whom, while owning a home in Georgia, Equity Experts received any payment of interest and/or fees in excess of sixteen percent (16%) per annum

of the delinquent assessment. (hereinafter the "Unjust Enrichment Class Members"); [and,]

d. All natural persons from whom, while owning a home in Georgia, Equity Experts sought payments in excess of sums stated in the governing HOA agreement plus reasonable costs of collection. (hereinafter the "Excess Sums Class Members").

(Id. at 2-3.) Plaintiffs request that the Court appoint both Plaintiffs Usry and Darnell as class representatives of the General Class, the Illegal Interest Class, and the Excess Sums Class. (Id. at 3 n.2.) Plaintiff Usry seeks appointment as representative of the Injunction Class, and Plaintiff Darnell seeks appointment as representative of the Unjust Enrichment Class. (Id.) Defendants again oppose certification on several grounds.

## II. DISCUSSION

### A. Class Certification Standard

"The district court has broad discretion in determining whether to certify a class." Washington v. Brown & Williamson Tobacco Corp., 959 F.2d 1566, 1569 (11th Cir. 1992). The district court's discretion, however, "must be exercised within the framework of [R]ule 23." Vega v. T-Mobile USA, Inc., 564 F.3d 1256, 1264 (11th Cir. 2009) (citation and internal quotation marks omitted). The class certification is proper only if "the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23 . . . have been satisfied." Gen. Tele.

Co. of Sw. v. Falcon, 457 U.S. 147, 161 (1982). Such an analysis frequently overlaps "with the merits of the plaintiff's underlying claim." Comcast Corp. v. Behrend, 569 U.S. 27, 33-34 (2013) (citation omitted). "Although the trial court should not determine the merits of the plaintiffs' claim at the class certification stage, the trial court can and should consider the merits of the case to the degree necessary to determine whether the requirements of Rule 23 will be satisfied." Vega, 564 F.3d at 1266 (citations omitted).

Certification under Rule 23 requires that the proponent "satisfy an implicit ascertainability requirement, the four requirements listed in Rule 23(a), and the requirements listed in any of Rule 23(b)(1), (2), or (3)." Karhu v. Vital Pharm., Inc., 621 F. App'x 945, 946 (11th Cir. 2015) (citing Little v. T-Mobile USA, Inc., 691 F.3d 1302, 1304 (11th Cir. 2012)). The four requirements of Rule 23(a) are commonly known as "numerosity, commonality, typicality, and adequacy of representation." Vega, 564 F.3d at 1265 (citation omitted). Additionally, Plaintiffs move for certification pursuant to Rule 23(b)(3). Rule 23(b)(3) requires the proponent to satisfy the additional requirements of "predominance" and "superiority." Id. Plaintiffs must satisfy the certification requirements not only for the general class, but also for the putative subclasses. FED. R. CIV. P. 23(c)(5) ("When appropriate, a class may be divided into subclasses that are each

11

treated as a class under this rule."); Johnson v. Am. Credit Co. of Ga., 581 F.2d 526, 532 (5th Cir. 1978) (interpreting former Rule 23(c)(4)(B)) ("A subclass . . . must independently meet all of [R]ule 23's requirements for maintenance of a class action.")

"The party seeking class certification has the burden of proof." Brown v. Electrolux Home Prods., Inc., 817 F.3d 1225, 1233 (11th Cir. 2016) (emphasis omitted). Doubts related to satisfaction of the standard are resolved against certification. See id. ("All else being equal, the presumption is against class certification because class actions are an exception to our constitutional tradition of individual litigation.").

## B. Implicit Certification Requirement - Ascertainability

"[A] plaintiff seeking to represent a proposed class must establish that the proposed class is adequately defined and clearly ascertainable." Carriuolo v. Gen. Motors Co., 823 F.3d 977, 984 (11th Cir. 2016) (citation and internal quotation marks omitted). "An identifiable class exists if its members can be ascertained by reference to objective criteria." Bussey v. Macon Cty. Greyhound Park, Inc., 562 F. App'x 782, 787 (11th Cir. 2014) (citation omitted).

The Eleventh Circuit recently acknowledged a split among Circuit Courts of Appeal as to whether plaintiff must demonstrate an "administratively feasible" method for determining class membership. Ocwen Loan Servicing, LLC v. Belcher, No. 18-90011,

2018 WL 3198552, at *3 (11th Cir. June 29, 2018). However, "[i]n the past, this court has stated that a class is not ascertainable unless the class definition contains objective criteria allowing class members to be identified in an administratively feasible way." Karhu, 621 F. App'x at 946 (citing Bussey, 562 F. App'x at 787). Although the Eleventh Circuit refrained from taking a position on the administrative feasibility circuit split, Ocwen Loan Servicing, 2018 WL 3198552, at *3, both sides address the requirement in their briefing. Accordingly, the Court will consider whether "identifying class members is a manageable process that does not require much, if any, individual inquiry." Bussey, 562 F. App'x at 787 (citation omitted).

Certification is also denied for lack of ascertainability where the proposed class constitutes a fail-safe class. "The issue of fail-safe classes has not yet been expressly addressed by the Eleventh Circuit," but "lower courts in the Eleventh Circuit have cautioned against certifying fail-safe classes." Etzel v. Hooters of Am., LLC, 223 F. Supp. 3d 1306, 1315 (N.D. Ga. 2016) (citation and internal quotation marks omitted). Although not squarely deciding the issue, the Eleventh Circuit recently warned against the "risk of promoting so-called 'fail-safe' classes." Cordoba v. DirecTV, LLC, 942 F.3d 1259, 1277 (11th Cir. 2019). "A fail-safe class is a class whose membership can only be ascertained by a determination of the merits of the case because the case is defined

13

in terms of the ultimate question of liability." In re Rodriguez, 695 F.3d 360, 369-70 (5th Cir. 2012). A fail-safe class improperly "shields the putative class members from receiving an adverse judgment. Either the class members win or, by virtue of losing, they are not in the class and, therefore, not bound by the judgment." Randleman v. Fidelity Nat'l Title Ins. Co., 646 F.3d 347, 352 (6th Cir. 2011). "So, the class definition assumes what it ostensibly seeks to prove." Etzel, 223 F. Supp. 3d at 1316 (citation omitted).

### 1. Fail-Safe Class

Defendant Equity Experts passively argues "Plaintiffs' proposed amended class definitions still [d]o not cure the 'fail-safe' proposed classes, and class certification should be denied on that fact alone." (Def.'s Resp. Opp'n Third Am. Mot. to Certify Class, Doc. 104, at 4.) In the Court's Order dated March 12, 2019, the Court found that the former proposed classes were not fail-safe classes. (Mar. 12, 2019 Order, at 11-12.) Plaintiffs' alteration of the class definitions from residency to ownership does not impact the former fail-safe analysis.

Defendant Equity Experts somewhat challenges whether the proposed classes are fail-safe because Plaintiffs must prove that the account is a "debt" and the class member is a "consumer" under the FDCPA. As discussed in the Court's February 16, 2018 Order, a fail-safe class is defined in terms of the ultimate question of

14

liability. (Feb. 16, 2018 Order, at 6 (citing In re Rodriguez, 695 F.3d at 369-70).) Nothing in the proposed class definitions requires a finding that the account is a "debt" or the proposed class member is a "consumer" under the FDCPA before the proposed member may join the various classes. Moreover, even accepting Defendant Equity Experts's argument as true, a finding that the account is a "debt" and the proposed class member is a "consumer" does not go to the ultimate question of liability, which is whether Defendant Equity Experts violated the FDCPA. The proposed class definitions are not fail-safe classes.

### 2. Objective Criteria & Administrative Feasibility

Next, Defendant Equity Experts appears to challenge the classes on objective criteria and administrative feasibility grounds. Whereas the previous motion for class certification sought to certify classes of all Georgia residents, the current motion proposes definitions of those "own[ing] a home in Georgia." Determining classes of plaintiffs owning a home in Georgia is objective and administratively feasible. Plaintiffs successfully cured this deficiency from their prior motion.

Defendant Equity Experts briefly asserts that "there is no administratively feasible method of determining membership given the individualized inquiries inherent to Plaintiffs' proposed class definitions." (Def.'s Resp. Opp'n Third Am. Mot. to Certify Class, at 4.) Defendant Equity Experts, however, offers no

specifics as to why class membership determination is not administratively feasible.  As proposed, the class definitions contain objective criteria for membership.

## C. Rule 23(a) Requirements

Rule 23(a) enumerates four prerequisites that must be shown before class certification: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation.  The Court evaluates each in turn.

### 1. Numerosity

Rule 23(a)(1) requires a showing that "the class is so numerous that joinder of all members is impracticable."  Although the Eleventh Circuit requires more than "mere allegations of numerosity[,] . . . a plaintiff need not show the precise number of members in the class."  Vega, 564 F.3d at 1267.  "[A] plaintiff . . . bears the burden of making *some* showing, affording the district court the means to make a supported factual finding, that the class . . . meets the numerosity requirement."  Id. (emphasis in original).  Nevertheless, the plaintiff's burden to show numerosity is a "low hurdle."  Id.  A proposed class containing forty members generally satisfies the numerosity requirement.  Id.

Here, Plaintiffs allege there are over 100 class members (Second Am. Compl., ¶ 39) and cite to a spreadsheet purportedly representing 800 individuals that Defendant Equity Experts

16

subjected to unlawful collection practices. (Third Am. Mot. to Certify Class, at 20; Spreadsheet, Doc. 79-9.) Defendant Equity Experts does not specifically challenge the numerosity prong and, instead, challenges certification arguing that Plaintiffs "failed to meet their burden of demonstrating the number of persons they seek to represent actually have standing to sue." (Def.'s Resp. Opp'n Third Am. Mot. to Certify Class, at 18 (emphasis omitted).)

Generally, standing is addressed at the outset of certification. Defendant Equity Experts, however, links standing to numerosity. It is well-established in the Eleventh Circuit that "[f]or a district court to certify a class action, the named plaintiffs must have standing, and the putative class must meet each of the requirements specified in Federal Rule of Civil Procedure 23(a), as well as at least one of the requirements set forth in 23(b)." Busby v. JRHBW Realty, Inc., 513 F.3d 1314, 1321 (11th Cir. 2008). Defendant Equity Experts does not challenge the named plaintiffs' standing based upon their alleged injury. Additionally, Defendant Equity Experts does not argue the absence of typicality on the basis that the potential class members and the class representatives suffered different injuries. See Williams v. Mohawk Indus., Inc., 568 F.3d 1350, 1357 (11th Cir. 2009) (noting typicality requires class representatives to suffer the same injury as the class members). Therefore, it generally follows that if the class representatives have standing to sue,

and the putative classes meet the other requirements of Rule 23, there should be no concerns with the putative class members' standing.

Defendant Equity Experts offers nothing that differentiates the standing of the class members from the class representatives. Cf. Cordoba, 942 F.3d at 1272 (finding difference between class representative repeatedly asking to be placed on do-not-call list and class members never asking to be placed on do-not-call list because class members not asking to be placed on list could not show injury fairly traceable to the defendant's wrongful conduct, which impacted the predominance analysis). Defendant Equity Experts's argument here, though, is different than the one in Cordoba. Defendant Equity Experts's argument is that Plaintiffs' burden is to prove the standing of the class members. "[I]f [the defendant's] argument depended on the proposition that all class members must prove their standing before a class could be certified, that argument would be wrong." Id. at 1273. The Court finds no issue with class standing here.

Although Defendant Equity Experts focused on standing, the Court still evaluates whether Plaintiffs sufficiently establish numerosity. Plaintiffs offer evidence that numerosity for the General Class is satisfied, but the motion lacks citations regarding the numerosity of each subclass as required by Rule

23(c)(5). Nevertheless, the Court examines the documents provided to determine if numerosity is met as to each subclass.

From the record, the Court first finds a sufficient number of putative class members exist to make joinder impracticable as to the General Class. Second, considering the only substantive difference between the General Class and the Illegal Interest Class is "letters" versus "communications," satisfaction of numerosity for the General Class implies satisfaction of numerosity for the Illegal Interest Class. Third, the spreadsheet contains a large number of entries exhibiting a filed lien satisfying the numerosity requirement for the Injunction Class.

Fourth, although Plaintiffs fail to direct the Court to any specific evidence as to numerosity for the Unjust Enrichment Class, the spreadsheet documents which homeowners made payments to Defendant Equity Experts. Plaintiffs allege that Defendant Equity Experts employed a common practice of charging interest and fees in excess of 16% per annum. (Second Am. Compl., ¶¶ 31, 33.) The spreadsheet reveals that Defendant Equity Experts received payments from a sufficient number of persons to make their joinder impracticable.

Fifth, similar to the Unjust Enrichment Class, Plaintiffs assert that Defendants utilized a common practice to charge homeowners sums exceeding the amounts permitted in the various governing HOA agreements. (Id.) Although the Court lacks evidence

concerning the various governing documents, for the reasons stated in Sections II(C)(2) and II(D)(1), *infra*, individual evaluations of the various HOA documents will force the Court to revisit the certification issue. Considering the number of persons that Defendant Equity Experts charged, numerosity is satisfied if Defendants, in fact, enacted a common practice of charging more than permitted under the HOA agreements.

2. Commonality

Next, Plaintiffs must establish "there are questions of law or fact common to the class," often referred to as commonality. FED. R. CIV. P. 23(a)(2). Commonality "does not require that all the questions of law and fact raised by the dispute be common." Vega, 564 F.3d at 1268 (citation omitted). To demonstrate commonality, the moving party must satisfy a "low hurdle" of showing "at least one issue whose resolution will affect all or a significant number of the putative class members." Williams, 568 F.3d at 1355, 1356.

In Defendant Equity Experts's opposition to class certification, grouped under one heading, it argues Plaintiffs failed to show predominance, commonality, typicality, and manageability. (Def.'s Resp. Opp'n Third Am. Mot. to Certify Class, at 7-16.) The Eleventh Circuit has cautioned against failure to give commonality and predominance their individual

considerations. See Vega, 564 F.3d at 1268-69. Therefore, the Court focuses only on the commonality requirement at this time.

Plaintiffs enumerate issues that establish commonality as to the General Class and subclasses. As to the General Class and Illegal Interest Class Members, Plaintiffs assert that Defendant Equity Experts employed a standard practice of sending letters and communicating with putative class members to charge amounts violating the law. (Second Am. Compl., ¶ 35; see also Kim Bragg and Associates Dep., Doc. 73-1, at 21-22.) Moreover, the majority of the communications in the record appear to be the same basic form. (Compare Galofaro Dep., Ex. 9, with id. Ex. 10; compare id. Ex. 13, with id. Ex. 14; compare id. Ex. 15, with id. Ex. 16.) Whether the alleged standard actions violate "the FDCPA is a legal question common to all members of the putative class and requires proof of the same material facts." Roundtree v. Bush Ross, P.A., 304 F.R.D. 644, 659 (M.D. Fla. Feb. 18, 2015); see also Muzuco v. Re$ubmitIt, LLC, 297 F.R.D. 504, 515 (S.D. Fla. 2013). Therefore, the low bar for commonality is met as to the General Class and Illegal Interest Class.

The same is true for the Injunction Class. Plaintiff Usry asserts that Defendant Equity Experts used a standardized lien process. (Second Am. Compl., ¶ 35.) The record contains evidence that Defendant Equity Experts employed a common process for filing a lien or lawsuit. (Galofaro Dep., at 121-32.) Therefore, the

legality of that process is commonly applicable to all putative class members. As for the classes defined to include amounts charged in excess of 16% per annum, including the Unjust Enrichment Class, whether amounts collected in excess of 16% violated federal or Georgia law can be uniformly determined.

Finally, the Court finds the Excess Sums Class to be a close decision. As Defendant Equity Experts points out, on the face of the class definition, the subclass seemingly requires an analysis of each HOA document. The Court agrees that if Plaintiffs are seeking to certify a class of putative members requiring evidence of each HOA agreement to determine validity of a claim, the subclass does not yield itself to resolution of "an issue that is central to the validity of each one of the claims in one stroke." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011). Nevertheless, Plaintiffs satisfy their low burden of establishing commonality as to Defendant Equity Experts's alleged practice of charging beyond the applicable HOA agreement. (Third Am. Mot. to Certify Class, at 5-6.) To the extent determination of liability for charging beyond the various HOA agreements is not shown to be a common practice and requires evaluation of each governing HOA document, the Court is entitled to "revisit the issue and de-certify the class." In re Delta/AirTran Baggage Fee Antitrust Litig., 317 F.R.D. 675, 681 (N.D. Ga. 2016) (citation omitted) (citing FED. R. CIV. P. 23(c)(1)(C)) (An order that grants or denies

class certification "may be altered or amended before final judgment.").

### 3. Typicality

Plaintiffs satisfy the typicality requirement. Typicality demands that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). As the Eleventh Circuit has instructed:

> The claim of a class representative is typical if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory. . . . A class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3). . . . The typicality requirement may be satisfied despite substantial factual differences when there is a strong similarity of legal theories.

Williams, 568 F.3d at 1357 (citation, internal citations, and internal quotation marks omitted). Although it briefly refers to typicality in a heading and offers a rule statement (Def.'s Resp. Opp'n Third Am. Mot. to Certify Class, at 7, 8), Defendant Equity Experts does not appear to set forth a specific typicality challenge. The record contains sufficient information upon which the Court determines that the claims of the class representatives are typical of the General Class and subclasses.

First, the record contains several examples of letters and collection communications from Defendant Equity Experts to Sarah Usry. (See, e.g., Galofaro Dep., Exs. 9, 11-13.) Defendant Equity

Experts purportedly sent similar communications to putative class members. (See id. Exs. 10, 14.) Daniel Darnell, also a proposed class representative for the General Class and Illegal Interest Class, received similar correspondence. (See id. Ex. 19, see also Darnell Aff., ¶ 11.) The putative class representatives' claims are sufficiently typical of the General and Illegal Interest Classes.

Second, Plaintiff Usry's claims are typical of the Injunction Class. Defendant Equity Experts filed a lien against Plaintiff Usry's home. (Usry Aff., ¶ 11.) Plaintiffs' position is that the threatening and filing of liens was a standard practice of Defendant Equity Experts (see Galofaro Dep., at 123-26), the practice had no basis in law or fact, and liens were filed against 369 other homeowners (Hamrick Aff., Doc. 79-10, ¶ 4). Therefore, considering the information in the record, the Court concludes the claim that the lien against Plaintiff Usry violated the FDCPA is typical of the putative Injunction Class Members.

Third, Plaintiff Darnell's claims are typical of the Unjust Enrichment Class. The claims of the Unjust Enrichment Class allege that Defendant Equity Experts collected sums in excess of legal limits. Plaintiff Darnell failed to make an initial payment of $115 to his property owners association. Plaintiff Darnell eventually paid $1,351 to settle his collection account with Defendant Equity Experts. Accordingly, Plaintiff Darnell's claim

is typical of the putative Unjust Enrichment Class Members' claims that Defendant Equity Experts collected sums beyond what the law permits.

Fourth, both Plaintiffs Usry and Darnell seek appointment as representatives of the Excess Sums Class. Plaintiffs Usry and Darnell's initial debts grew to much larger sums that they claim were not specifically included in their HOA. As previously noted herein, Plaintiffs cite portions of the record indicating Defendant Equity Experts employed a common practice. Plaintiffs' claims — that the charges were beyond the governing HOA agreement plus reasonable costs of collection — are consistent with the claims of the putative class.

4. Adequacy of Representation

Under Rule 23(a)(4), "[T]he representative party in a class action must adequately protect the interests of those he purports to represent." Valley Drug Co. v. Geneva Pharm., Inc., 350 F.3d 1181, 1189 (11th Cir. 2003) (citation and internal quotation marks omitted). The adequacy requirement contains two separate inquiries: "(1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." Id. (citation omitted). Defendant does not argue that Plaintiffs will fail to adequately prosecute the action, and Plaintiffs assert they are prepared to do so. (Usry Aff., ¶ 19; Darnell Aff., ¶ 18.)

Defendant Equity Experts does, however, raise the issue that a conflict exists between the class representatives and the putative class members.

"If substantial conflicts of interest are determined to exist among the class, class certification is inappropriate." Valley Drug, 350 F.3d at 1189. Defendant Equity Experts asserts that it benefitted some potential class members because some potential class members saved their home from foreclosure. (Def.'s Resp. Opp'n Third Am. Mot. to Certify Class, at 19.) Defendant Equity Experts fails to cite any examples but states, "[I]t is by no means inconceivable that many of" the more than 800 putative class members "who were serviced by [Defendant] Equity Experts, benefited from the services provided because of the many opportunities provided by [Defendant] Equity Experts to save their home from foreclosure." (Id.)

First, the Court finds no conflict as to the General Class, Illegal Interest Class, Unjust Enrichment Class, and Excess Sums Class. The Court agrees with Plaintiffs' position that even if the charging or payment of illegal sums saved some homes from foreclosure, no conflict exists. An adequacy showing may be defeated when the benefits "were so significant and apparent that the class members receiving them effectively had no incentive to see the challenged practice(s) declared unlawful." In re Delta, 317 F.R.D. at 695. Assuming Defendant Equity Experts actually

conferred a benefit on homeowners allowing them to avoid foreclosure, the Court does not find that those hypothetical homeowners that avoided foreclosure lack incentive to have Defendant Equity Experts's alleged actions declared unlawful. Should Defendant Equity Experts's actions prove unlawful, any homeowners that saved their home from foreclosure had an interest in saving their home from foreclosure without unlawful collection efforts and payments.

Second, the Court does recognize a potential conflict between homeowners attempting to save their home from foreclosure and putative Injunction Class Members. Nevertheless, "a conflict will not defeat the adequacy requirement if it is 'merely speculative or hypothetical.'" Id. at 681 (quoting Ward v. Dixie Nat'l Life Ins. Co., 595 F.3d 164, 180 (4th Cir. 2010)). In the event a true conflict materializes, the certification issue may be revisited. See Fed. R. Civ. P. 23(c)(1)(C). The adequacy of representation prong is met.

## D. Rule 23(b)(3) Requirements

Once a plaintiff establishes the Rule 23(a) requirements for certification, a plaintiff must demonstrate one of the three requirements under Rule 23(b). Plaintiffs here seek certification under Rule 23(b)(3). Pursuant to Rule 23(b)(3), a plaintiff must show "questions of law or fact common to class members predominate over any questions affecting only individual members" and "that a

class action is superior to other available methods for fairly and efficiently adjudicating the controversy." In making that determination courts evaluate four factors:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;

> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

> (D) the likely difficulties in managing a class action.

FED. R. CIV. P. 23(b)(3).

## 1. Predominance

Predominance requires that "the issues in the class action that are subject to generalized proof and thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof." Babineau v. Fed. Express Corp., 576 F.3d 1183, 1191 (11th Cir. 2009). The common questions "must predominate such that they have a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." Landeros v. Pinnacle Recovery, Inc., 692 F. App'x 608, 612 (11th Cir. 2017) (citation and internal quotation marks omitted); accord Vega, 564 F.3d at 1270. "Common issues will not predominate over individual

questions if, as a practical matter, the resolution of an overarching common issue breaks down into an unmanageable variety of individual legal and factual issues." Carriuolo, 823 F.3d at 985. To make a predominance determination, courts "begin[] . . . with the elements of the underlying cause of action." Erica P. John Fund, Inc. v. Halliburton Co., 563 U.S. 804, 809 (2011); accord Vega, 564 F.3d at 1270.

Plaintiffs' class action involves three underlying claims: (1) violation of the FDCPA; (2) violation of Georgia usury laws; and (3) unjust enrichment. In order to prevail on an FDCPA claim, "a plaintiff must establish that (1) she was the object of 'collection activity' arising from 'consumer debt'; (2) the defendant qualifies as a 'debt collector' under the FDCPA; and (3) the defendant engaged in an act or omission prohibited by the FDCPA." Darrisaw v. Pa. Higher Educ. Assistance Agency (PHEAA), No. CV 316-082, 2017 WL 1377719, at *2 (S.D. Ga. Apr. 11, 2017). The Court begins with Defendant Equity Experts's contention that because determining whether the accounts at issue qualify as a consumer debt requires individual determinations, the common issues do not predominate.

The FDCPA applies only to "payment obligations" that are "primarily for personal, family, or household purposes." Oppenheim v. I.C. Sys., Inc., 627 F.3d 833, 837 (11th Cir. 2010) (emphasis omitted). Although the Court recognizes that some courts

hesitate to certify classes when the court cannot ensure that all of the debts involved are non-consumer debts, see, e.g., McCamis v. Servis One, Inc., No. 8:16-CV-1130-T-30AEP, 2017 WL 589251, at *5 (M.D. Fla. Feb. 14, 2017) (noting individual questions as to whether debts were consumer debts contributed to defeating predominance), other courts have concluded that this alone may not thwart certification. "[T]he need to show that the transactions involved in a particular case are consumer transactions is inherent in every FDCPA class action[]. If that need alone precluded certification, there would be no class actions under the FDCPA." Hicks v. Client Servs., Inc., No. 07-61822-CIV, 2008 WL 5479111, at *6 (S.D. Fla. Dec. 11, 2008) (citation omitted). As Hicks concluded, "there are means for making such determinations"[1] and "proper drafting of the claim form may help exclude non-consumer debts."[2] Id.; accord Collins v. Erin Capital Mgmt., LLC, 290 F.R.D. 689, 700 (S.D. Fla. 2013). Moreover, questions regarding Defendant Equity Experts's status as a debt collector and alleged violations of the FDCPA do not require individual determinations. Accordingly, common questions surrounding the communications, letters, amounts collected, amounts sought, and liens and lawsuits

---

[1] Although the Court cited Karhu for the proposition that self-identification is a concern at the ascertainability stage (Mar. 12, 2019 Order, at 14), ascertainability is not at issue here.

[2] Defendant Equity Experts argues that Plaintiffs' present definitions are another fail-safe class. (Def.'s Resp. Opp'n Third Am. Mot. Certify Class, at 12.) The Court disagrees. Whether a putative class member is in the class is not dependent on the ultimate question of liability — whether Defendants' debt collection practices violated the FDCPA.

filed predominate over individual questions related to whether the various accounts constitute a consumer debt.

Moreover, even if Defendant Equity Experts possesses individual defenses based upon the absence of a consumer debt, the question as to whether Defendant Equity Experts sought illegal interest remains common to the class. Accordingly, there is not a concern that several plaintiffs meeting a class definition will join as class members but fail to fit within one of the asserted claims against Defendant Equity Experts.

Next, Plaintiffs assert a claim for violation of Georgia usury laws.

> The essential elements of usury are (1) a loan or forbearance of money, express or implied; (2) made with an understanding that the principal shall or may be returned; (3) that provides a profit greater than that authorized by law in exchange for such loan or forbearance; and (4) with an intent to violate the law.

Mallard v. Forest Heights Water Works, Inc., 580 S.E.2d 602, 603 (Ga. Ct. App. 2003). As for the usury claims, common issues predominate. Defendant Equity Experts proclaims that each association's governing documents must be examined because some of the governing documents capped interest at 18%, not the 16% figure contained in the class definition. Even accepting Defendant Equity Experts's position as true, Plaintiffs' theory is that the charged amount over 16% is usurious, regardless of the language in the governing documents. Therefore, such determinations are capable

of classwide resolution regardless of the language in the individualized HOA documents. Although the governing documents may present individual questions as to the unjust enrichment claim, discussed below, whether the governing documents permitted Defendant Equity Experts to collect interest in an amount greater than 16% is a legal question capable of classwide resolution. Therefore, classwide issues predominate.

Finally, Plaintiffs allege unjust enrichment. Unjust enrichment "is an equitable concept and applies when as a matter of fact there is no legal contract, but when the party sought to be charged has been conferred a benefit by the party contending an unjust enrichment which the benefitted party equitably ought to return or compensate for." Wachovia Ins. Servs., Inc. v. Fallon, 682 S.E.2d 657, 665 (Ga. Ct. App. 2009). Plaintiffs' theory of unjust enrichment depends on the allegation that Defendant Equity Experts received amounts Plaintiffs did not owe. Defendant Equity Experts maintains that it charged amounts under the various governing documents. As discussed, regarding commonality, the Court maintains some concern that individual governing documents may impact the Court's ability to manage the class action as to this claim.

The Eleventh Circuit has stated that "common questions will rarely, if ever, predominate an unjust enrichment claim." Vega, 564 F.3d at 1274. The Court understands the Eleventh Circuit's

reasoning and proceeds with certification with caution. Here, however, Plaintiffs argue, with evidence that Defendant Equity Experts's collection efforts were on "autopilot," that Defendant Equity Experts's "business operations are the same to all members of the putative class." Muzuco, 297 F.R.D. at 521. To the extent Defendant Equity Experts engaged in a common practice of charging and accepting amounts not permitted, predominance is satisfied. If, however, Plaintiff fails to establish such a common practice or Defendant Equity Experts shows that determination of excess payment is subject to individualized proof, as noted before, the Court will revisit the certification issue as to the classes impacted by such individualized determinations.

2. Superiority

Here, a class action is superior to other methods of adjudicating the controversy. Defendant Equity Experts argues that the absence of manageability and a potential recovery of $0.00 per putative class member preclude certification. Beginning with manageability, Defendant Equity Experts offers no authority in support of its belief that the class action is unmanageable. The Court previously addressed the consumer debt issue and does not find distinguishing putative class members owning their home for nonconsumer purposes to be unmanageable.[3]

---

[3] Defendant Equity Experts also argues, without supporting authority, that underlying debt enforcement actions may preclude the present claims of some putative plaintiffs. The Court is not persuaded by the argument at this stage.

Next, without support, Defendant Equity Experts states the potential recovery for any class member is $0.00. Cf. Gaalswijk-Knetzke v. Receivables Mgmt. Servs. Corp., No. 8:08-cv-493-T-26TGW, 2008 WL 3850657, at *4, *4 n.7 (M.D. Fla. Aug. 14, 2008) (noting how the defendant arrived at the potential recovery amount the defendant argued was de minimis). Defendant Equity Experts does not explain why the potential recovery per putative class member is $0.00 versus $1.00 or $2.00, but Plaintiffs point out that even assuming Defendant Equity Experts is judgment proof, other defendants are party to this lawsuit. As for the potential for a small recovery, the Supreme Court has quoted:

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 617 (1997) (quoting Mace v. Van Ru Credit Corp., 109 F.3d 338, 344 (7th Cir. 1997)). The Eleventh Circuit has noted the benefit of class adjudication of FDCPA claims as compared to individual adjudication, even where the potential recovery per putative class member is very small. Dickens v. GC Servs. Ltd. P'ship, 706 F. App'x 529, 537–38 (11th

---

Without deciding one way or the other, a state enforcement action does not necessarily preclude a later FDCPA claim. See Azar v. Hayter, 874 F. Supp. 1314, 1317 (N.D. Fla. 1995), aff'd, 66 F.3d 342 (11th Cir. 1995). Without additional information, the Court does not conclude that potential preclusion issues as to some putative plaintiffs destroy predominance or superiority.

Cir. 2017). The benefit of class adjudication is particularly true when the conduct complained of implicates a defendant's common practice. Jones v. Advanced Bureau of Collections LLP, 317 F.R.D. 284, 291, 294 (M.D. Ga. 2016).

The Court recognizes that it is required to consider the cost and recoveries in determining the efficiency of the litigation, but it does not consider the potential recovery in a vacuum. Evaluating the efficiency of class adjudication is done in connection with the other factors enumerated in Rule 23(b)(3). Although the potential recovery is higher for individuals, there is no indication the putative class members are aware of their rights under the FDCPA or under Georgia law. Putative class members' lack of awareness is supported by Plaintiffs' averment that they are unaware of other lawsuits that class members are pursuing. Moreover, to the extent that the putative class members did pursue the alleged claims individually, it would place a consequential strain on the courts. See Jones, 317 F.R.D. at 294 (quoting Kennedy v. Tallant, 710 F.2d 711, 718 (11th Cir. 1983)) ("[S]eparate [FDCPA] actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts."). Overall, class adjudication is superior to other forms of adjudication.

### III. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Plaintiffs' amended motion for class certification (Doc. 93) is **GRANTED**. The Court **CERTIFIES** the proposed class and subclasses pursuant to Federal Rule of Civil Procedure 23(b)(3) as defined in Plaintiffs' amended motion for class certification. (Third Am. Mot. to Certify Class, at 2-3.) Plaintiffs shall **SUBMIT** a proposed notice in accordance with Rule 23(c)(2)(B) to the Court for approval. Pursuant to Rule 23(c)(1)(B) and 23(g), the Court **APPOINTS** the appearing attorneys on behalf of Plaintiffs as class counsel. (See Hudson Aff., Doc. 79-12.)

Further, the Court **APPOINTS** Plaintiffs Usry and Darnell as class representatives of the General Class, the Illegal Interest Class, and the Excess Sums Class. Additionally, Plaintiff Usry is **APPOINTED** class representative of the Injunction Class, and Plaintiff Darnell is **APPOINTED** class representative of the Unjust Enrichment Class.

Finally, the Parties are **DIRECTED** to submit a joint report relating to the status of discovery and other scheduling matters.

**ORDER ENTERED** at Augusta, Georgia, this 5th day of March, 2020.

J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA