# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| Sarah Usry and Daniel Darnell, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>EquityExperts.org, LLC doing business as Equity Experts, Jacqueline Galofaro, Michael Novak, and Mark Bredow,<br><br>Defendants. | Case No.: 1:16-cv-00010-JRH-BKE<br>Hon. Judge J. Randal Hall<br>Magistrate Judge Brian K. Epps |

## DEFENDANTS' CONTESTED MOTION FOR RECONSIDERATION OF MARCH 5, 2020 ORDER CERTIFYING CLASS

Defendant EquityExperts.org, LLC ("Equity Experts"), Michael Novak ("Novak"), Jacqueline Galofaro ("Galofaro"), and Mark Bredow ("Bredow"), (collectively, "Defendants"), through its undersigned counsel, hereby files its Motion for Reconsideration of this Honorable Court's March 5, 2020 Order Certifying a Class in this matter. Specifically, Defendants ask this this Honorable Court set aside its March 5, 2020 order certifying a class in this matter. In support of this motion, Defendant relies on the arguments set forth in its brief below.

### I.   STANDARD OF REVIEW

It is appropriate to grant a motion to reconsider where a "[c]ourt has patently misunderstood a party, or has made a decision outside of the adversarial issues

1

presented to the [c]ourt by the parties, or has made an error not of reasoning, but of apprehension.... Such problems rarely arise and the motion to reconsider should be equally rare." *Scott v. Allstate Prop. & Cas. Ins. Co.*, No. 408CV236, 2010 WL 1526050, at *1 (S.D. Ga. Apr. 15, 2010) (quotes and cites omitted). As noted in *Carey v. Bellsouth Short Term Disability Plan,* such a motion may be granted if there is (1) newly discovered evidence, (2) an intervening development or change in controlling law, or (3) a need to correct a clear error of law or fact. Slip. Op., 2008 WL 595938, 1:06-CV-2589-WSD (N.D. Ga. Feb. 29, 2008).

This is one of those rare occasions. Although there is not "newly discovered evidence," there is newly available evidence, and there were misrepresentations of fact made by the Plaintiffs in their Reply in Support of Class Certification. Moreover, and perhaps more importantly, there are ongoing concerns regarding the judicial economy at issue in this matter and the mounting costs of defense and prosecution of this case where the net worth of not only Equity Experts, but also of Bredow, Novak, and Galofaro would not result in any damage award for a potential class. Specifically, the facts of this case suggest that Bredow, Novak, and Galofaro did not act as "debt collectors", and considering their $0 valuations and negative net worth, proceeding with this case on a class-wide basis would not be superior.

## II.     Statement of Facts Relevant to This Motion for Reconsideration

Plaintiffs' Third Motion to Certify a Class was filed on March 19, 2019, at docket 93. Defendants filed their Response in Opposition to Certification (the "Response") on June 24, 2019, at docket 104. With their Response, *all* Defendants, not just Equity Experts, asserted that the net recovery would be $0.00. Dkt. 104, Pg. 22 of 23. Defendants further iterated that its concern in pursuing a class action in this matter would result in a net recovery of $0.00 for class members, where if an individual action were to be pursued, in FDCPA cases, there would at least be a possibility of $1,000.00 in statutory damages. Dkt. 104, Pg. 23 of 23.

Thereafter, on June 8, 2019, Plaintiffs' filed their Reply in Support of Class Certification (the "Reply") on July 8, 2019, at docket 106. In support of their argument that a class action is a superior method of resolution, Plaintiffs relied on their theory that members of the class were "unaware" that potential class members were "unaware" that they may be able to bring suit against Equity Experts for any alleged violations of the FDCPA. Dkt. 106, Pgs. 15-16 of 18. Plaintiffs' counsel must not have searched – because, proposed class members *have indeed* filed separate suits against Equity Experts.

- Ashley Douget (ED MI, Case No. 4:17-cv-12806-MFL-RSW)
- Jeffrey Cross (ND GA Case No. 1:17-cv-03804-AT) (Exhibit 4 – Default Judgment Award against Equity Experts for $147,702)
- Davatrice Lindsey (ND GA Case No. 1:18-cv-00786-MLB)
- Marie Woodward (ND GA Case No. 4:15-cv-00082-HLM)

3

- Latonya White (ED MI Case No. 2:17-cv-12102-MAG-SDD)
- Michael Gooding (ED MI Case No. 2:17-cv-12489-AJT-APP)

Moreover, some of these cases have been brought to resolution, albeit under confidential terms.

As referenced in Defendant's Response at docket 93, Equity Experts has a negative net worth, and as such, any recovery as to Equity Experts would be $0.00, or *de minimis*, at best. Stunningly, Plaintiffs' did not refute Equity Experts' claims that they do, in fact, have a $0.00 net worth, or a negative net worth. Instead, with their Reply, Plaintiffs' boldly makes the defamatory allegation that Equity Experts has somehow doctored its books to render themselves "judgment proof". Dkt. 106, Pg. 15 of 18. Plaintiffs have, in fact, been in possession of Equity Experts' financial information since 2016, all of which reflects Equity Experts negative net worth. Dkt. 79-4, Pg. 158 of 621, reflecting portions of Equity Experts' tax returns. Despite having access to this information, Plaintiffs did not refute Equity Experts' net worth allegations of $0.00. Instead, Plaintiffs relied upon the net worth of the additional Defendants – Novak, Bredow, and Galofaro. However, Novak, Bredow, and Galofaro are not "debt collectors", and cannot be held liable under the FDCPA, nor do they have a positive net worth.

Specifically, it would not be common for Novak, Bredow, and Galofaro to have not contacted or communicated with the class representatives or other Georgia consumers. In fact, it would have been unlikely for such an event to take place. *Id.*

*See* Exhibit 1, 2, and 3. Novak, Bredow, and Galofaro did not mail letters to any of the class representatives or any other Georgia consumers. *See* Exhibit 1, 2, and 3. Neither Novak, Bredow, or Galofaro were involved in the day-to-day direction, training, or guidance of employees as it related to debt collection activities or efforts as it relates to any of the class representatives or any other Georgia consumers. *See* Exhibit 1, 2, and 3. Neither Novak, Bredow, or Galofaro determined the specific payment plans or settlement offers that would be extended to the Plaintiffs or Georgia consumers. *See* Exhibit 1, 2, and 3. Neither Novak, Bredow, or Galofaro created the letters, policies, or procedures for EquityExperts.org, LLC, at issue in this matter, as many of those letters, policies, or procedures predated their employment with EquityExperts.org, LLC, or were created with outside counsel or compliance counsel. *See* Exhibit 1, 2, and 3. Neither Novak, Bredow, or Galofaro regularly have direct contact with consumers. *See* Exhibit 1, 2, and 3.

Additionally, Novak's principal and primary purpose during the course of his employment with Equity Experts has been financial management, balancing the books, and working with other professional service firms. *See* Exhibit 1, para. 13. Bredow's principal and primary purpose during the course of his employment with Equity Experts was reporting to management regarding complaints related to Equity Experts, monitoring licensing requirements, monitoring computer networks, working with vendors, and working to improve efficiencies and compliance. *See*

Exhibit 2, para. 24. Galofaro's principal and primary purpose during the course of her employment with Equity Experts has been managing corporate legal matters, managing general business operations, vendor agreements, and defense litigation. *See* Exhibit 3, para. 13. Moreover, neither Novak, Bredow, or Galofaro attempt to collect debts as a part of their employment. *See* Exhibit 1, para. 14; 2, para. 25; and 3, para. 14. Lastly, like Equity Experts, Novak, Bredow, and Galofaro have a negative net worth. *See* Exhibit 1, para. 15; 2, para. 26; and 3, para. 15.

Because of 1) the material misstatement regarding class members having not filed suit against Equity Experts; and 2) the fact that Novak, Bredow, and Galofaro are not debt collectors and therefore cannot be found liable under the FDCPA or otherwise have $0 valuations or a negative net worth; and 3) Plaintiffs' counsel's abuse of the FDCPA's class action mechanism, Defendants respectfully request that the Court reconsider its Order granting Class Certification.

### III.   Analysis

Plaintiffs' foundation for superiority in bringing this class action regarding net worth is the purported net worth of Bredow, Novak, and Galofaro, should Equity Experts net worth be negative or $0.00. However, if Bredow, Novak, and Galofaro are not debt collectors, and therefore, are not liable under the FDCPA, or otherwise have negative or no net worth, proceeding as a class is not a superior method as there will result in <u>*no recovery*</u> for any class members. Curiously, despite it being

6

Plaintiffs' burden of proof and discovery having closed long ago, Plaintiffs have taken absolutely *no discovery* as it pertains to Novak, Bredow, or Galofaro's net worth, which *all* Defendants asserted their Response in Opposition to Class Certification was $0.00 or negative. Defendants request that this Honorable Court reconsider its Order Certifying a Class in this case for this very reason, because currently the only party standing to benefit at this point in time is Plaintiffs' counsel, whose attorneys' fees are continuing to increase as time passes, which are recoverable if the class prevails.

### a. **Bredow, Novak, and Galofaro are not debt collectors, and therefore, their net worth, though $0.00, is irrelevant because they cannot be held liable under the Fair Debt Collection Practices Act.**

Employees, officers, and shareholders of debt collection companies cannot be held personally liable under the FDCPA absent separate grounds to pierce the corporate veil, or separate grounds qualifying them as debt collectors, none of which are present here. *White v. Goodman,* 200 F.3d 1016, 1019 (7th Cir.2000), *Pettit v. Retrieval Masters Creditors Bureau, Inc.,* 211 F.3d 1057, 1059 (7th Cir.2000) (noting that to the extent plaintiffs sued defendant based on his position as sole shareholder of the debt collection company, defendant avoids personal liability because the FDCPA does not contemplate liability for shareholders except in limited circumstances where the corporate veil is pierced); *Ernst v. Jesse L. Riddle, P.C.,* 964 F. Supp. 213 (M.D. La. 1997) (granting defendant's motion to dismiss

where the allegations of the complaint did not support a finding that the corporate veil should be pierced to hold defendant individually liable under the FDCPA); *see also Aubert v. American Gen. Fin., Inc.,* 137 F.3d 976, 979-80 (7th Cir. 1998) (granting summary judgment against plaintiffs because parent could not be held liable for the debt collection practices of its subsidiary absent alter ego liability).

"The Fair Debt Collection Practices Act is not aimed at the shareholders of debt collectors operating in the corporate form unless some basis is shown for piercing the corporate veil, which was not attempted here, or at companies that perform ministerial duties for debt collectors, such as stuffing and printing the debt collector's letters." *White,* 200 F.3d at 1019 (emphasis added). In fact, Judge Posner of the Seventh Circuit cautioned that such suits are "frivolous" and may be grounds for sanctions, noting that "[t]he joinder of these defendants illustrates the all-too-common abuse of the class action as a device for forcing the settlement of meritless claims and is thus a mirror image of the abusive tactics of debt collectors at which the statute is aimed." *Id; accord Pettit,* 211 F.3d at 1059 ("FDCPA suits against the owners of a debt collection company who are not otherwise debt collectors are frivolous and might well warrant sanctions."). Significantly, these cases hold that shareholders and officers are not subject to the FDCPA regardless of whether they exercise extensive control over the company:

> *[T]he extent of control exercised by an officer or shareholder is irrelevant to determining his liability under the FDCPA.* Because such individuals do not become "debt collectors" simply by working for or owning stock in debt collection companies, we held [in White v. Goodman] that the Act does not contemplate personal liability for shareholders or employees of debt collection companies who act on behalf of those companies, except perhaps in limited instances where the corporate veil is pierced.

*Pettit,* 211 F.3d at 1059 (emphasis added; citations omitted); *White,* 200 F.3d at 1016, 1019. This is because rather than contemplate personal liability of the shareholders or officers, the FDCPA "utilize[s] the principle of vicarious liability." *Pettit,* 211 F.3d at 1059. Because debt collection companies are on the hook for the violations of their employees, the "company and its managers have proper incentives to adequately discipline wayward employees, as well as to instruct and train employees to avoid actions that might impose liability." *Id.*

Moreover, Bredow, Novak, and Galofaro do not separately meet the definition of a "debt collector" under 15 USC § 1692a. To qualify as a debt collector, you must meet one of two criteria: (i) your "principal purpose" is debt collection, or (ii) you regularly attempt to collect debts "owed or due another." *See Goia v. CitiFinancial Auto*, 499 F. App'x 930, 938 (11th Cir. 2012) ("A party qualifies as a debt collector where it operates a business that has the principal purpose of collecting debts or regularly attempts to collect debts that are owed to another."); *see also* 15 U.S.C. § 1692(a)(6). Here, Bredow, Novak, and Galofaro did not

9

materially or personally participate in the collection of debt. Nor did they regularly engage – directly or indirectly – in the collection of debts.

Furthermore, it would have been exceedingly uncommon for Bredow, Novak, and Galofaro to have ***any*** contact or communication with any of the named Plaintiffs or ***any*** of the Georgia consumers in this matter, or to have signed or sent any of the letters at issue, or participated in any phone calls with Georgia consumers. *See* Exhibit 1, generally, also, ¶¶ 2, 3; Exhibit 2, generally, and ¶¶ 5, 6; Exhibit 3, generally, and ¶¶ 2, 3. *See, e.g, Ditty v. Checkrite LTD, Inc.,* 973 F. Supp. 1320 (D. Utah 1997); *Brink v. First Credit Resources* 57 F. Supp. 2d 848 (D. Ariz. 1999) (finding that an attorney and the sole member of the limited liability company who drafted the form letter sent to the plaintiff and directed the plaintiff to make her check payable to him individually was a debt collector under the FDCPA); *Piper v. Portnoff Law Associates* 274 F.Supp.2d 681, 689-690 (E.D. Pa 2003)(finding that where attorney in a limited partnership signed a collection letter was individually liable for the acts of the partnership); *Musso v. Seiders* 194 F.R.D. 43, 46-47 (D.Conn. 1999) (high ranking executive and director of debt collection company cannot be held liable under the FDCPA simply by virtue of his position with the company, but could be held liable if he personally participated in the collection of debts). As such, since Bredow, Novak, and Galofaro have not participated in any meaningful way in the collection of debts of Georgia consumers, and because their

principal duties are/were not the collection of debts, they cannot be held liable as debt collectors under the FDCPA. Moreover, any net worth they have, which is $0.00, is not properly considered in this matter. Therefore, the only net worth which can be considered is Equity Experts, which is negative.

  b. **<u>Abuse of Statute defeats Superiority.</u>**

The potential for abuse by attorneys and plaintiffs is another factor this Honorable Court should consider when revaluating superiority given the misrepresentation made by Plaintiffs – whether it was made purposefully or inadvertently. *See, Rodriguez v. Family Publications Serv., Inc.,* 57 F.R.D. 189, 195 (C.D. Calif 1972). The Eastern District of Wisconsin case discussed how FDCPA cases have failed to serve their intended purpose where - as here - plaintiffs sought to impose a substantial penalty on a defendant – claiming that they suffered greatly at the hands of a debt collector, but also admitting that they did not incur, and would not seek actual damages:

> This provision for attorney's fees has turned FDCPA cases into a profitable vein of litigation upon which entire firms focus their practice, provided of course the firm can keep finding plaintiffs. ... For the most part, FDCPA cases appear to be much more about attorney's fees than the prosecution of consumer rights. ... The plaintiffs attorneys are likely to receive nearly double that paid to the entire class. Every additional step in the litigation increases that figure for attorney's fees. Only if a trial were to result in a finding that no FDCPA violation occurred would the defendant not have to pay the plaintiffs attorney's fees. However, such a victory would be hollow given that it would require substantial expense in the form of its own attorney's fees. ... Thus the plaintiffs in

11

> such cases are in a highly advantageous position because prompt class settlements are much more cost effective than prolonged litigation.

*Berther v. TYS Total Debt Management, Inc.,* 2007 WL 1795472 at 2-5 (E.D. Wisc. 2007); *see also, French v. Corporate Receivables, Inc.,* 489 F.3d 402 (1st Cir. 2007) ("Waste is not in the public interest. The Congress that passed the Fair Debt Collection Practices Act in 1977 could hardly have wished to reward lawyers for doing non-productive work and wasting their adversaries' time and the time of the courts as well."). Plaintiffs' class framework would result in the imposition of a penalty that would financially harm and completely devastate the Defendants, who already have a negative net worth, a result which is totally and completely disproportionate to any potential recovery for individual class members. This is exactly the type of abusive and harassing use of the class action vehicle which has been criticized by many courts.

While recognizing that *Mace v. Van Ru Credit Corp.,* 109 F.3d 338, 344 (7th Cir. 1997), mentioned in dicta only, that a *de minimis* recovery "should not automatically bar a class action," *the Seventh Circuit in Mace clearly did not hold that a de minimis recovery could not bar a class.* In fact, in a situation such as the case at bar, where there is likely not even a *de minimus* recovery but no possible recovery at all, proceeding as a class action would be a complete waste of this Court's time. It would also be a complete waste of the class' time. The only party that stands to gain, due the fee-shifting provisions of the FDCPA, is plaintiff's

12

counsel by their potential receipt of massively increased attorney's fees.

When that fact is combined with the $0.00 recovery for the class members, it becomes clear that the class action remedy sought by Plaintiffs – and their counsel - should not be viewed as superior to individual claims in connection with which putative class members would be entitled to recover *something* if allowed to proceed individually. *Kline v. Coldwell, Banker & Co.,* 508 F.2d 226, 234- 35 (9th Cir.1974) (class treatment lacks superiority when damages "shock the conscience"); *Wilcox v. Commerce Bank of Kansas City,* 474 F.2d 336, 341-47 (10th Cir.1973); *In re: Trans Union Corp. Privacy Litig.,* 211 F.R.D. 328, 350-51 (N.D.Ill.2002); *Ratner v. Chemical Bank New York Trust Co.,* 54 F.R.D. 412, 416 (S.D.N.Y.1972) (class certification lacked superiority where violation was technical and aggregation of statutory damages under TILA would be financially devastating for defendant).

This potential outcome is not superior. In fact, given this counsel's experience with class actions, the cost of administering and mailing the class notice alone to a class of approximately 800 would significantly exceed the class recovery, if any. Despite the fact that the class would likely receive nothing based on defendants' aggregate net worth, the cost of administering the class would be *at minimum* approximately $5,000.00. Would plaintiff actually seek to send out 800 checks for zero dollars? This is the type of outcome that benefits no one except for Plaintiffs' counsel, who are entitled to their fees and costs even when there is a *de minimis*

13

recovery from the defendants.

Ultimately, those Plaintiffs may have been better served filing individual actions, because as a class action, the Plaintiffs are not entitled to statutory damages, because in sharp contrast, the individual members could pursue separate individual actions and request up to $1,000 in statutory damages, and attorneys' fees would be available in each such successful case. While the class will receive nothing, defendants will be out tens of thousands of dollars in attorneys' fees to their attorneys, to Plaintiffs' attorneys (assuming an adverse result – and even without an adverse result, they are burdened by the costs of defense by this protracted litigation), plus the costs of class administration. This is not superior for anyone other than Plaintiffs' counsel, for they alone are benefitted from class certification at this stage, where Defendants have disclosed their negative net worth *as early as 2016*, or at maximum, *de minimis* net worth.

Defendants' negative net worth means that there are **no damages** that could be allocated among the putative class members. Courts have found that *no recovery* in a class action is an inferior method of adjudication. *See Jones*, 215 F.R.D. at 570; *Sonmore*, 206 F.R.D. at 260-61; *see also Gradisher v. Check Enforcement Unit, Inc.*, 209 F.R.D. 392, 393-94 (W.D. Mich. 2002) (decertifying FDCPA class when defendant's net worth provided each class member with potential $0.06 in damages). Under similar facts, one court held that:

> By certifying the class, the court would ensure a *de minimus* monetary recovery for class members, which constitutes a substantial reduction in what class members may otherwise be entitled to by pursuing their claims individually. Because plaintiffs pursuing an action individually are eligible to recover a maximum of $1,000, while absent class members in this case are eligible for a maximum of merely twenty-five dollars, the Court finds that the interest of class members in individually controlling the prosecution of their claims prevails over any efficiency objectives that may be achieved through management of the litigation as a class action. Thus, Plaintiffs have failed to establish that a class action is a superior method for adjudicating claims regarding Defendants'... conduct and form letter.

*Sonmore*, 206 F.R.D. at 265-66. Plaintiffs are essentially proposing that the putative class members release all claims they could assert against Defendants under the FDCPA in exchange for nothing other than a payday for their attorneys. *See Zimmerman v. Zwicker & Associates, P.C.*, 2011 WL 65912, *4-5 (D.N.J. Jan. 10, 2011) (court found that it was not fair, reasonable or appropriate to foreclose hundreds of thousands of consumers from pursuing their FDCPA rights in exchange for nothing). In fact, in at least one of the cases where a Georgia class member did file an individual case against Equity Experts, they were awarded a default judgment of $147,702 – a fact which Plaintiffs' counsel conveniently leaves out, and again, where they alone stand to benefit. *See* Exhibit 4. Accordingly, this Court should decertify the putative FDCPA class.

## Conclusion

Based on the foregoing, Defendant respectfully requests that the Court grant its Motion to Reconsider, and Decertify the Class Formed on March 5, 2020. Contemporaneously with this Motion, Defendants are filing a Motion to File Net Worth Information Under Seal. In the alternative, Defendants request a hearing to be heard more fully on the issues regarding superiority, net worth, or any other matters pertaining to certification.

        Respectfully submitted by:
        LAW OFFICES OF JAMES O. BASS, PC

        /s/ James O. Bass
        James O. Bass
        Attorney for EquityExperts.Org, LLC
        Georgia Bar No. 041239

Law Offices of James O. Bass, PC
420 Creekstone Ridge
Woodstock, GA 30188
770-874-6464
jim@bass.law

## **CERTIFICATE OF SERVICE**

The undersigned certifies that a precise copy of the above DEFENDANTS' MOTION FOR RECONSIDERATION OF ORDER CERTIFYING CLASS was filed via the Court's Electronic Case Filing System which automatically sends electronic notice to counsel of record as follows:

George G. Robertson, Esq.
David E. Hudson, Esq.
Mitchell Byrd Snyder, Esq.
N. Shannon Gentry Lanier, Esq.
HULL BARRETT, PC
P.O. Box 1564
Augusta, Georgia
30903-1564
grobertson@hullbarrett.com
dhudson@hullbarrett.com
msnyder@hullbarrett.com
slanier@hullbarrett.com

This 19TH Day of March, 2020

                                                      Respectfully submitted by:
                                                      LAW OFFICES OF JAMES O. BASS, PC

                                                      /s/ James O. Bass
                                                      James O. Bass
                                                      Attorney for EquityExperts.Org, LLC
                                                      Georgia Bar No. 041239

Law Offices of James O. Bass, PC
420 Creekstone Ridge
Woodstock, GA 30188
770-874-6464
jim@bass.law